**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES AND PRODUCT LIABILITY LITIGATION | MDL Docket No. 2672 |

**RESPONSE OF DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC. IN
SUPPORT OF TRANSFER TO THE EASTERN DISTRICT OF VIRGINIA,
ALEXANDRIA DIVISION OR THE EASTERN DISTRICT OF MICHIGAN, DETROIT
DIVISION**

Volkswagen Group of America, Inc. ("VWGoA"), defendant in all actions before the Panel, submits this brief in support of transfer for coordinated or consolidated pretrial proceedings.[1] (Dkt. ##1, 10, 13). This filing also responds to various Responses to the Motions for Transfer. (Dkt. ## 7, 24, 25, 39, 43, 86, 95, 114, 117, 134, 283, 295, 299, 301, 307, 316, 318, 330).

VWGoA urges that these cases be transferred to either the Eastern District of Virginia, Alexandria Division, or the Eastern District of Michigan, Detroit Division. (*Infra* at 4-6.) VWGoA opposes transfer to other proposed transferee districts, particularly the orchestrated efforts on behalf of California districts . (*Infra* at 7-8.)

---

[1] Volkswagen AG, headquartered in the Federal Republic of Germany, and some of its subsidiaries and affiliates are named as defendants in some of the relevant actions. Although not yet served as required pursuant to the Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters, [1969] 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Service Convention"), and without waiver of their rights under the Convention, they have authorized VWGoA to state that they support VWGoA's position on transfer for the reasons stated by VWGoA herein.

This matter has been set for argument at the December 3, 2015 session of the Panel in New Orleans, Louisiana.  VWGoA respectfully requests the opportunity to present oral argument on disputed transferee forum issues at that time.

### STATEMENT OF FACTS

On September 18, 2015, VWGoA and VWAG received Notices of Violation from the U.S. Environmental Protection Agency ("EPA"), and the California Air Resources Board ("CARB") related to emissions compliance matters, specifically the installation of "defeat device" engine emissions control software, in approximately 480,000 VW and Audi vehicles equipped with 2.0 Liter Diesel engines, model years 2009-2015, sold in the U.S.  The vehicle systems at issue in the September 18 Notices were designed by VWAG in Germany and manufactured abroad.

The September 18 Notices triggered a nationwide wave of class action litigation, riding the coat-tails of the EPA's announced finding of a "defeat device" in the involved vehicles. Starting later in the day on September 18, and continuing to the present, more than 350 pending putative class actions have been filed, the vast majority of which were commenced in federal district courts.  The complaints in these cases are based on the September 18 Notices and assert similar claims, on behalf of overlapping putative classes.    In fact, most attach one or both September 18 Notices as Exhibits.  All of the cases name VWGoA as a defendant.  Substantial numbers also name VWAG and/or Audi AG as defendants, and a number of cases name Robert Bosch, GmbH, a well-known German manufacturer of electrical equipment, which is alleged to have supplied the electronic control modules incorporating the challenged "defeat device" software algorithms, as a defendant.

These actions are at the earliest stage.  To date, no responsive pleadings have been served, and proceedings in many cases have been stayed and deadlines for responsive pleadings extended pending the Panel's action on the present motion for transfer.

## I.
## THESE CASES SHOULD BE TRANSFERRED FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

The cases presently before the Panel (and expected "tag along" cases) are clearly suited to multidistrict transfer and consolidation.  Section 1407(a) of Title 28 of the United States Code charges the Panel to act for the "convenience of parties and witnesses" so as to achieve the "just and efficient conduct" of the actions, which, in itself, warrants transfer here. The overlap of factual and legal issues raised in the pleadings, all of which relate to the subjects addressed in the September 18 Notices, is self-evident.

Additional impetus to consolidation and transfer stems from the fact that federal jurisdiction over all actions before the Panel rests, *inter alia*, on 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA").   A prime factor cited by CAFA's sponsors in favor of federalizing class actions, such as those involved in this proceeding, was the availability of multidistrict procedures in the federal court system.  Senate Report No. 109-13 (2005) at 38 ("If other class actions on the same subject have been [or are likely to be] filed elsewhere, the Committee . . . would strongly favor the exercise of federal jurisdiction so that the claims of all proposed classes could be handled efficiently on a coordinated basis pursuant to the federal courts' multidistrict litigation process as established by 28 U.S.C. § 1407."); See also *id*. at 51 ("federal courts can handle duplicative class actions more efficiently through multidistrict litigation proceedings.").   In short, the tidal wave of duplicative litigation here, all following in the wake, and involving the subject matter, of the September 18 Notices, is a classic scenario for MDL consolidation and transfer.

Accordingly, VWGoA respectfully requests a transfer of these and all tag-along actions for consolidated pre-trial proceedings under 28 U.S.C. § 1407.

**II.**

**THESE CASES SHOULD BE TRANSFERRED TO
THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION OR THE
EASTERN DISTRICT OF MICHIGAN, DETROIT DIVISION**

For the reasons outlined below, transfer of these cases to either the Virginia or Michigan districts "will be for the convenience of parties and witnesses and will promote the just and efficient conduct" of these actions.  28 U.S.C. § 1407(a).  VWGoA's position rests on practical considerations of the center of gravity of the issues in these matters, and on docket status and geographic convenience, both for access to company witnesses and documents and for the German defendants and participants in the proceedings who would have to travel to and from Europe.

**1. The Eastern Districts of Virginia and Michigan Are The Most Appropriate Transferee Districts.**

The Eastern District of Virginia is home to VWGoA's headquarters, a fact routinely cited by the Panel in selecting a transferee forum.  *See In Re: Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2627, 2015 U.S. Dist. LEXIS 76167, at *3 (J.P.M.L. June 12, 2015); *In re Xybernaut Corp. Sec. Litig.*, 403 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005) (transferring actions to district of defendant's headquarters, where witnesses and documents likely to be located); *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 528 F. Supp. 2d 1339, 1340-41 (J.P.M.L. 2007) (same);  *In re Live Concert Antitrust Litig*., 429 F. Supp. 2d 1363, 1364 (J.P.M.L. 2006) (same).

VWGoA's headquarters complex, in Herndon, Virginia, and the U.S. District Courthouse, in Alexandria, Virginia, are both located in the greater Washington, D.C. metropolitan area, in

suburban Fairfax County, Virginia.  The EPA is headquartered across the Potomac River in Washington, D.C.  Additionally, House and Senate Committees are conducting hearings and investigations, making the proximity of Capitol Hill additionally germane.  *See, e.g.*, *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.,* 469 F. Supp. 2d 1348, 1350 (J.P.M.L. 2006) (substantial need for discovery from U.S. Government a transferee forum selection factor).

The Alexandria courthouse is familiar with the efficient handling of large-scale litigation, and the Washington, D.C. area is a major national and international travel hub served by two large airports (Dulles International and Reagan National) and a major Amtrak station. This location is convenient and accessible, for all parties and their counsel, and particularly as an entry point for witnesses traveling from Europe.

There presently are at least nineteen putative national class actions subject to (or likely to be subject to) this MDL proceeding pending in the Eastern District of Virginia.[2]   The Eastern District of Virginia has only one pending MDL.[3]  By contrast, 29 MDL proceedings, centralizing more than 600 active cases, are currently pending in the Northern and Central District Courts in California.[4]   The Eastern District of Virginia has substantially fewer pending cases (less than 2,000) than other district courts proposed by certain plaintiffs (nearly 8,000 in the District of New Jersey and more than 15,000 combined in the Northern and Central Districts of California.[5]  *See,*

---

[2] A list of the E.D.Virginia cases is attached as Exhibit A.

[3] U.S. Judicial Panel on Multidistrict Litigation, MDL Statistics Report – Distribution of Pending MDL Dockets by District (Oct. 15, 2015)("MDL Statistics Report"), at 6, available at http://www.jpml.uscourts.gov/sites/jpml/files/Pending MDL_Dockets_By_District-October-15-2015.pdf (last accessed Oct. 15, 2015).

[4] *Id.* at 1.

[5] See U.S. Courts, Federal Judicial Caseload Statistics: U.S. District Courts – Civil, Table C-1 ("Cases Commenced, Terminated and Pending During the 12-Month Period Ending March 31,

*e.g.*, *In re Classicstar Mare Lease Litig*., 528 F. Supp. 2d 1345, 1347 (J.P.M.L. 2007) (noting that the transferee district's "general docket conditions permit us to make the Section 1407 assignment knowing that the court has the resources available to manage [the] litigation"); *In re Vonage Mktg. & Sales Practices Litig.,* 505 F. Supp. 2d 1375, 1377 (J.P.M.L. 2007) (noting that the transferee judge "has the time" to efficiently manage the litigation).

Many of the factors which support transfer to the Eastern District of Virginia also favor the Eastern District of Michigan (see generally Dkt. ##49, 281, 316), where there are currently at least twenty-nine related actions which are (or will likely be) subject to this MDL.[6] VWGoA has a substantial presence in that forum, where it maintained headquarters until 2008. The MDL caseload in the Eastern District of Michigan, like that in Virginia is light, totaling only 3 MDL proceedings.[7] The general caseload of slightly over 4,000 pending cases in the Eastern District of Michigan[8] compares favorably with the Eastern District of Virginia. All cases in Michigan are assigned to and consolidated before the Hon. Gerald E. Rosen, who has conferred preliminarily with the parties' counsel. (See, Dkt. #281 at 20, Dkt # 316 at 20.) In short, VWGoA submits that coordinated or consolidated pretrial proceedings in this litigation would be as appropriate in the Eastern District of Michigan as in the Eastern District of Virginia and respectfully defers to the Panel as to which forum may be more suitable.

---

2013 and 2014")("Judicial Caseload Statistics"),
available at: http://www.uscourts.gov/statistics/table/c/federal-judicial-caseload-statistics/2014/03/31 (last accessed Oct. 15, 2015).

[6] A list of the E.D. Michigan cases is attached as Exhibit B.

[7]  MDL Statistics Report at 3.

[8] Judicial Caseload Statistics, supra.

### 2.   Other Proposed Transferee Districts

Proponents of the District of New Jersey look, *inter alia*, to VWGoA's incorporation in that state and certain technical offices in New Jersey as a purported nexus. (Dkt #25 at 3-4, Dkt # 318).[9]   But VWGoA has never maintained headquarters in the state, and its predecessor, Volkswagen of America, Inc., moved its executive offices completely out of New Jersey – to the Eastern District of Michigan – in 1991, more than 15-years before the earliest involved vehicles in these cases were sold.

The number of filings to date in California districts (approximately 70 federal cases) appears to be largely the construct of certain counsel jockeying for post-transfer "lead counsel" status  in a "race to the courthouse."  *See, generally*, *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1021 (N.D. Cal. 1999) (detailing one firm's method used to accumulate clients to support lawyer-created "group" as lead plaintiff and the firm as lead counsel), cited in *Manual for Complex Litigation*, 4th § 31.31 n. 55.  Such choreographed concentrations of cases should be given little consideration by the Panel.  California is not a convenient forum for this litigation. Some of California's partisans have cited the pre-September 18 activities of CARB as a transferee forum factor.   (*see, e.g.,*  Dkt. ##1, 43, 86, 134, 307, 330).  This consideration is now largely moot, as CARB's future activities will likely be coordinated with or subsumed in the EPA's investigation run from Washington, D.C.[10]   As the simultaneous issuance of the respective September 18 Notices confirms, the federal and California agencies have been closely

---

[9] All New Jersey cases are consolidated before Hon. Jose L. Linares, who met with the parties' counsel on October 20, 2015.

[10] Statement of  Christopher Grundler, Head, EPA Office of Transportation and Air Quality, House Committee, Oct. 8, 2015, available at http://docs.house.gov/meetings/IF/IF02/20151008/ 104046/HHRG-114-IF02-Wstate-GrundlerC-20151008.pdf (last accessed October 19, 2015).

coordinating their investigations at all times, likely rendering virtually all pertinent CARB material accessible through the EPA.

Certain proposed transferee districts, i.e. the Northern District of Georgia (Dkt. #7), the Southern District of Texas (Dkt. #13), the Northern District of Ohio (Dkt. #24) the Eastern District of Tennessee (Dkt. #295),[11] and the Western District of Tennessee (Dkt.#283) appear to offer nothing pertinent to the transfer calculus other than capable district judges, which are of course available throughout the nation.   VWGoA submits that locational considerations alone should remove these venues from further consideration.

## CONCLUSION

For the reasons stated above, the cases currently pending in all district courts, and future "tag-along" actions, should be transferred to the Eastern District of Virginia, Alexandria Division, or to the Eastern District of Michigan, Detroit Division, for coordinated or consolidated pretrial proceedings.

---

[11]   The location of VW's vehicle assembly facility in Chattanooga, Tennessee, cannot justify MDL transfer to that district, as the design and manufacture of the engines and control systems at issue took place entirely abroad.  (*Supra* at 2)

Respectfully Submitted:

**HERZFELD & RUBIN, P.C.**
*Attorneys for Defendant Volkswagen Group of*
*America, Inc. in all actions.*

BY __/s/ Jeffrey L. Chase_____

Jeffrey L. Chase
Michael B. Gallub
Daniel V. Gsovski
Mark A. Weissman
125 Broad Street
New York, New York 10004
T: 212-471-8500
f: 212-344-3333
jchase@herzfeld-rubin.com
mgallub@herzfeld-rubin.com
dgsovski@herzfeld-rubin.com
mweissman@herzfeld-rubin.com